UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAOTHAR OYINDAMOLA OLADOJA,<br><br>        Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>        Defendants. | Civil Action No. 24-1143 (JXN) (MAH)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before this Court on Defendants the United States Department of State, the United States Embassy, Kingston Jamaica, Anthony Blinken, and Nicholas Perry's ("Defendants") motion to dismiss Plaintiff Kaothar Oyindamola Oladoja's ("Plaintiff") Complaint (ECF No. 1) ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion to dismiss (ECF No. 14) is **GRANTED**, and the Complaint is **DISMISSED without prejudice**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

This matter is brought pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, requesting relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.

Plaintiff, a United States citizen, filed an I-130 petition with the United States Citizenship and Immigration Services ("USCIS") on behalf of her husband Ahmad Akinkunle Tijani's

("Tijani").[1]  (Compl. ¶¶ 11, 13).  Tijani is a Jamaican citizen.  (*Id.* at ¶ 12).  On January 25, 2023, USCIS approved Plaintiff's 1-130 petition and forwarded the petition to the National Visa Center ("NVC") for visa processing.  (*Id.* at ¶ 15).  On or about August 24, 2023, Tijani was interviewed by the consular section of the U.S. Embassy in Kingston, Jamaica.  (*Id.* at ¶¶ 16-17).  Following the interview, the consular officer "requested additional information" and Tijani completed and submitted a Form DS-5535 "shortly thereafter."  (*Id.* at ¶ 17).  Plaintiff "has made repeated efforts to obtain a decision in this matter" and "has contacted the consulate multiple times."  (*Id.* at ¶ 18).  However, Tijani's application remains pending.  (*Id.* at ¶ 17).

On February 28, 2024, Plaintiff initiated this lawsuit against Defendants and alleges two causes of action.  (*See generally* Compl.).  First, Plaintiff alleges that Defendants have unlawfully withheld and unreasonably delayed the adjudication of Tijani's visa petition in violation of the APA.  (Compl. ¶¶ 19-27).  Second, Plaintiff alleges that Defendants' unreasonable delay in processing Tijani's application violates her due process rights protected by the Fifth Amendment.  (*Id.* at ¶¶ 28-31).  Plaintiff requests, *inter alia*, that this Court (i) compel Defendants to promptly complete all administrative processing within sixty days; (ii) take jurisdiction of this action and adjudicate Tijani's immigrant visa; (iii) compel Defendants to issue an immigrant visa to Tijani; and (iv) compel Defendants to explain the "cause and nature of the delay and inform Plaintiff of any action that may be taken to accelerate processing of the visa application[.]"  (Compl. at 6-7).

On July 1, 2024, Defendants moved to dismiss the Complaint.  (ECF No. 14) ("Br."). Plaintiff opposed the motion (ECF No. 15) ("Opp'n"), to which Defendants replied (ECF No. 17) ("Reply").  The matter is now ripe for consideration.

---

[1] The following factual allegations are taken from the Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Challenges to subject matter jurisdiction can be either 'facial' or 'factual.'" *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In considering a Rule 12(b)(1) motion to dismiss, a district court must first determine whether the motion "attack[s]" (1) the complaint as deficient on its face; or (2) "the existence of subject matter jurisdiction in fact, . . . apart from any pleadings." *Mortensen*, 549 F.2d at 891.

A "facial attack" asserts that the "plaintiff did not properly plead jurisdiction," whereas a "factual attack" involves an averment that "jurisdiction is lacking based on facts outside of the pleadings . . . ." *Smolow*, 353 F. Supp. 2d at 566 (citation omitted). In a "facial attack," the court must "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks omitted). On a "factual" attack, the Court may "weigh and consider evidence outside the pleadings" and no "presumptive truthfulness attaches to the plaintiff's allegations." *Id.* at 346 (cleaned up). In both scenarios, the plaintiff bears the burden of proving jurisdiction. *Id.* Defendants have put forth a facial and factual attack to Plaintiff's assertion of subject matter jurisdiction. (Br. at 13-14).[2]

### B. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it

---

[2] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his or] her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[.]" *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. <u>DISCUSSION</u>

Defendants make three arguments in support of their Motion. First, Defendants argue the doctrine of consular non-reviewability bars all of Plaintiff's claims. (Br. at 15-20). Second, Defendants contend the Court lacks subject matter jurisdiction over the APA claim. (*Id.* at 20-22). Finally, Defendants assert the Complaint fails to state a claim under the APA for unreasonable delay or viable due process claim. (*Id.* at 22-26). As the Court finds (i) it lacks subject matter

jurisdiction over the APA claim and (ii) the Complaint fails to state a due process claim, the Complaint will be dismissed in its entirety.[3]

### A. **The APA Claim (Count I) Fails for Lack of Subject Matter Jurisdiction.**

Defendants argue this Court should dismiss Count I of the Complaint under Rule 12(b)(1) for lack of jurisdiction over the APA claim. (Br. at 20-22). Because jurisdiction is always a threshold issue, the Court will first consider whether Plaintiff has met her burden of establishing this Court's jurisdiction over the APA claim, which the Court finds she has not. The INA does not require nonimmigrant visa applications to be adjudicated within a certain time and Plaintiff has not alleged any improper behavior, deliberate inaction, or bad faith on behalf of Defendants. Thus, the Court lacks subject matter jurisdiction over the APA claim.

The Mandamus Act empowers courts to issue writs of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of "'mandamus is a drastic one, to be invoked only in extraordinary situations.'" *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (describing a writ of mandamus as "one of the most potent weapons in the judicial arsenal" (internal quotation marks omitted)). Further, the writ of mandamus "'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief.'" *Temple Univ.*

---

[3] Although invoked by the parties in their briefing, the Court declines to consider the applicability of the doctrine of consular non-reviewability because the Court has dismissed both claims in the Complaint. However, under that doctrine, "as a rule," a federal court "cannot review" "a consular officer's denial of a visa." *Department of State v. Muñoz*, 602 U.S. 899, 908 (2024). The doctrine "recognize[s] that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control'" and that the "Judicial Branch has no role to play 'unless expressly authorized by law.'" *Id.* (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) and *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also, e.g.*, *Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978). Notably, another court in this District recently found the doctrine was "not relevant" because the plaintiffs were "not seeking to have the Court review the merits of a consular officer's final decision; instead, they argue[d] a final decision was never made." *Meleo v. Blinken*, No. 23-3495, 2024 WL 4345289, at *2 n.5 (D.N.J. Sept. 30, 2024).

*Hosp., Inc. v. Sec'y United States Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Before a court can assess the merits of a mandamus action, the litigant must pass a jurisdictional bar. *See Temple Univ. Hosp., Inc.*, 2 F.4th at 132. Ordinarily, to qualify for mandamus, the party seeking a writ of mandamus must meet three elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* (internal quotation marks and citations omitted). Although each element is required for a court to have jurisdiction to issue the writ, a court can, nevertheless, decline to issue a writ under its discretion. *See Cheney*, 542 U.S. at 381.

In terms of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, Section 701(a) of the APA precludes judicial review when prescribed by the statute or "agency action is committed to agency discretion by law." As the Supreme Court recently elucidated, the "INA[ ] does not authorize judicial review of a consular officer's denial of a visa." *Muñoz*, 602 U.S. at 908. This is the doctrine of consular non-reviewability and only bars judicial review of agency *action*. *Id.*

Reviewing agency *inaction*, which Plaintiff asks the Court to do, is different. Under Section 706(1) of the APA, federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." *See also* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A court only has subject matter jurisdiction to compel agency action "when the agency is compelled by law to act

6

*within a certain time period.*" *Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *7 (D.N.J. Mar. 4, 2024) (emphasis added) (quoting *Kale v. Mayorkas*, No. 21-8095, 2021 WL 2652124, at *4 (D.N.J. June 28, 2021)); *see also Norton*, 542 U.S. at 65. Even without a specified deadline under law, however, the Court has jurisdiction if the plaintiff alleges improper behavior, "deliberate inaction[,] or bad faith on the [part] of the State Department in processing [an] individual petition." *See Azam*, 2024 WL 912516, at *8.

To have jurisdiction under the APA or Mandamus Act for an unreasonably delayed action, a plaintiff must make a two-part showing. First, the plaintiff must identify a mandatory, nondiscretionary duty. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64). Then, the plaintiff must point to "provisions establishing a specific time frame" for adjudicating visa applications. *Id.* (internal quotation marks omitted).[4]

With respect to their Rule 12(b)(1) motion, Defendants argue that this Court lacks jurisdiction because "there is no explicit statutory deadline by which a consular officer is required to adjudicate—let alone re-adjudicate—a visa application[.]" (Br. at 20-22). Plaintiff counters that all three elements of a mandamus writ are satisfied, and that "the delay in adjudication of Plaintiff's spouse visa application is egregious." (Opp'n at 13-17).

### 1. Non-Discretionary Duty

First, the Court must determine whether Defendants have a mandatory, non-discretionary duty to adjudicate a visa application in the first instance. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64).

---

[4] Plaintiff argues this Court has subject matter jurisdiction under both the APA and Mandamus Act and that she "is free to bring a claim under **both** the APA and Mandamus Act." (Opp'n at 11-17). Consistent with a majority of courts in this District, the Court will consider the relief sought by Plaintiff under the Mandamus Act subsumed by her APA claim. *See, e.g.*, *Bokhari v. Bitter*, No. 23-1947, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) (expressing the "Mandamus Act claim is subsumed by his APA claim" and thus "duplicative"); *see also Azam*, 2024 WL 912516, at *4 ("Where, as here, a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively.")

Under the plain language of the statute, Defendants have a mandatory, nondiscretionary duty to adjudicate visa applications pursuant to Sections 1202(b) and (d). Section 1202(d) of the statute provides: "All nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added); *see also* 8 U.S.C. § 1202(b) (providing the same for immigrant visa applications).[5] As this District recently elucidated, "[t]hose words mean what they say." *Azam*, 2024 WL 912516, at *6. Without Supreme Court or Third Circuit case law to the contrary, the Court finds the plain language of Section 1202 governs. Therefore, Section 1202 prescribes a non-discretionary duty and requires that visa applications be reviewed and adjudicated by a consular official." *Azam*, 2024 WL 912516, at *6 (citing 8 U.S.C. § 1202).

### 2. Time to Discharge Duty

The Court next considers whether the duty must be undertaken within a certain time. Because Plaintiff has failed to set forth any evidence of bad faith, deliberate inaction, or improper behavior, Plaintiff "cannot use Section 1202[ ] to leapfrog the line given the discretion inherent in the visa adjudication process." *Azam*, 2024 WL 912516, at *7 (internal citations omitted).

Notably, "nothing in federal law governing consular officials' . . . adjudication of visa applications imposes a particular deadline." *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *2 (D.N.J. Feb. 23, 2022); *see Azam*, 2024 WL 912516, at *7. Even without a statutorily prescribed time by which the Government must adjudicate visa applications, courts in this District have found that they have jurisdiction if a plaintiff alleges some form of bad faith, deliberate inaction, or improper behavior. *See Azam*, 2024 WL 912516, at *8. Plaintiff here has not alleged anything more than ordinary, albeit frustrating, delays in the immigration process and the adverse

---

[5] The Court recognizes that federal district courts across the country differ on the meaning of Section 1202 but does not find that it mandates a different result here. *See Azam*, 2024 WL 912516, at *5 (collecting cases and discussing three different interpretations of Section 1202).

effects that flow therefrom. (*See generally* ECF No. 1). None of Plaintiff's allegations rise to the level of bad faith, deliberate inaction, or improper behavior.

The prevailing rule in this District is absent a showing of impropriety by Defendants or that an agency is compelled by law to act within a time certain, the Court lacks jurisdiction. *Kale*, 2021 WL 2652124, at *4; *see also Jamoussian*, 2022 WL 538424, at *2 (noting the APA confers "jurisdiction to compel an agency to act 'when an agency is compelled by law to act within a certain time period" (quoting *Norton*, 542 U.S. at 65). "[A]bsent a 'specific time frame for adjudication . . . Congress did not intend to limit the discretion' of the State Department with respect to the time, place, and manner in reviewing and adjudicating visa applications." *Azam*, 2024 WL 912516, at *8 (quoting *Qiu v. Chertoff*, 486 F. Supp. 2d 412, 418 (D.N.J. 2007)). Courts in this District have also found the lack of explicit statutory or regulatory timeframe within the INA context especially "significant" as the INA does time-limit certain other actions. *See, e.g.*, *Banerjee v. Jaddou*, No. 22-4664, 2023 WL 8068092, at *8 (D.N.J. Nov. 21, 2023) (citing 8 U.S.C. § 1447(b) ("If there is a failure to make a [naturalization] determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.")). Congress has conferred great discretion on the Executive Branch in the immigration context. And the State Department's discretion to process visa applications on its own timeline and according to its own priorities is a prime example. *See Azam*, 2024 WL 912516, at *8 ("[T]he agency's duty to resolve matters presented to them within a reasonable time must be considered in the context of the wide discretion the State Department retains relating to the time, place, and manner of visa petition adjudication.").

9

Considering the language of the INA and the guidance from courts in this District, the Court concludes that it lacks jurisdiction to review the *reasonableness* of any delay in the Government's adjudication decision under Section 1202. Therefore, Plaintiff's APA claim must be dismissed for lack of subject matter jurisdiction under the APA and the Mandamus Act.

### B. The Complaint Fails to State a Viable Due Process Claim (Count II).

Defendants also argue for dismissal of Plaintiff's due process claim (Count II) because "Plaintiff lacks a constitutional interest in the adjudication of [ ] Tijani's visa application" under Rule 12(b)(6). (Br. at 19, 26). Plaintiff counters that Defendants have violated her due process rights by "failing to provide a reasonable and just framework of adjudication in accordance with applicable law[.]" (Opp'n at 21-23).

The Fifth Amendment guarantees that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. However, "*no* process is due if one is not deprived of life, liberty, or property.'" *Kerry v. Din*, 576 U.S. 86, 90 (2015) (Scalia, J.) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). In *Muñoz*, the Supreme Court expressed "'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" (602 U.S. at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). The Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country" because it is not a longstanding and deeply rooted tradition in this country. *Id.* at 909. Moreover, the Supreme Court expressed a "claim to a procedural due process right in *someone else's* legal proceeding would have unsettling collateral consequences." *Id.* at 916.

Further, to the extent the Complaint alleges "[t]he combined delay and failure to act by Defendants has irrevocably harmed Plaintiff by causing a loss of consortium between Plaintiff and

10

. . . Tijani[,]" the Complaint still fails. (Compl. ¶ 31). Courts nationwide have rejected the argument that citizens have protected constitutional interests in having their non-citizen spouses present in the United States. *See, e.g.*, *Din*, 576 U.S. at 101 (Scalia, J.) ("Because Fauzia Din was not deprived of 'life, liberty, or property' when the Government denied [her husband's] admission to the United States, there is no process due to her under the Constitution. To the extent that she received any explanation for the Government's decision, this was more than the Due Process Clause required."); *Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) ("Nothing in the Constitution creates a right to bring a noncitizen spouse into the United States." (citation omitted)); *Bakran v. Sec'y, United States Dep't of Homeland Sec.*, 894 F.3d 557, 565 (3d Cir. 2018) ("[N]o court has recognized that a citizen spouse has a constitutional right to have his or her alien spouse reside in the United States[.]" (collecting cases)); *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States. ").

Because Plaintiff fails to establish a constitutionally protected interest in having Tijani's visa application adjudicated or having Tijani present in the United States, her Fifth Amendment due process claim cannot stand.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 14) is **GRANTED**, and the Complaint is **DISMISSED without prejudice**. An appropriate Order accompanies this Opinion.

**DATED:** March 21, 2025

JULIEN XAVIER NEALS
United States District Judge